IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

BRENT RYAN                                                            PLAINTIFF

V.                                        CIVIL ACTION NO. 1:17-cv-00128-HSO-JCG

PELICIA HALL, et al.                                                DEFENDANTS

### REPORT AND RECOMMENDATION

BEFORE THE COURT are four motions: (1) Plaintiff's "Motion to Show Cause"[1] (ECF No. 24); (2) Plaintiff's Motion for a Preliminary Injunction (ECF No. 26); (3) Plaintiff's Motion for Summary Judgment (ECF No. 28); and (4) Defendants' Motion for Partial Summary Judgment (ECF No. 44). Plaintiff Brent Ryan, who is proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. § 1983 prisoner civil rights complaint against Defendants Pelicia Hall, Jacqueline Banks, Marshall Turner, Richard Pennington, Joseph Cooley, Pearlie Smith, and Sheneice Hartfield Evans, alleging unconstitutional conditions of confinement and abusive institutional practices. Having reviewed the submissions of the parties, the record, and relevant legal authority, the undersigned United States Magistrate Judge recommends that Defendants' Motion for Partial Summary Judgment be granted for failure to exhaust administrative remedies with regards to most of his claims. Additionally, the undersigned further recommends that Plaintiff's Motion to Show Cause, Motion for a Preliminary Injunction, and Motion for Summary Judgment be denied.

---

[1] This Motion actually requests a preliminary and permanent injunction and will be treated as such.

## I. BACKGROUND

Ryan, a post-conviction inmate in the custody of the Mississippi Department of Corrections (MDOC), is currently incarcerated at the Mississippi State Penitentiary. However, this case relates to events occurring at the South Mississippi Correctional Institute (SMCI) in Leakesville, Mississippi. He is suing Pelicia Hall, Commissioner of the MDOC; Marshall Turner, warden at SMCI; Jacqueline Banks, superintendent at SMCI; Richard Pennington, the Administrative Remedy Program (ARP) Director for the MDOC; Joseph Cooley, ARP investigator; Pearlie Smith, a captain at SMCI, and Sheneice Hartfield Evans, a captain at SMCI. Ryan is suing all defendants in their individual and official capacities.

Ryan filed his Complaint on April 26, 2017 (ECF No. 1), and he filed an Amended Complaint on May 12, 2017 (ECF No. 5). His amended complaint merely adds additional factual allegations to each of his claims. These claims are separated into two categories: conditions of confinement and abusive institutional practices. He alleges that his Eighth Amendment right to be free from cruel and unusual punishment has been violated by the Defendants failure to provide adequate bedding, failure to provide adequate outside exercise time, failure to provide adequate dining facilities and sanitation, failure to properly ventilate the building, and failure to provide adequate security.

Ryan also alleges that abusive institutional practices have violated his right to be free from cruel and unusual punishment and have blocked his access to courts.

In support of this claim, he details two incidents involving Defendants Smith and Evans' interactions with other inmates, and he also contends that Defendants Pennington and Cooley have violated the First Amendment and denied him access to the courts by failing to investigate his ARPs. He contends that when another inmate pointed out that he had not received bread on his tray, Smith refused to give it to him, and when Ryan intervened, she asked if Ryan was the other inmate's boyfriend (ECF Nos. 1 & 5). He also contends that Evans accused another inmate of trying to steal a tray and then used racist language towards that inmate (ECF Nos. 1 & 5). Finally, Ryan alleges that Cooley and Pennington are preventing his ARPs from going forward and are therefore condoning abusive institutional practices. (ECF Nos. 1 & 5).

Ryan seeks a declaration that the actions he describes violated his rights; a preliminary and permanent injunction requiring that Defendants Hall, Turner, and Banks provide him with a mattress, compensatory damages of $1,000.00 against each defendant, punitive damages of $5,000.00 against each defendant, a jury trial, costs, and any other relief deemed appropriate by the Court (ECF Nos. 1 & 5). Throughout this case, Ryan has made numerous motions and has written numerous letters. However, only three of his motions are presently before the Court.

In his Motion to Show Cause, Ryan alleges that SMCI is unsafe, understaffed, and dangerous (ECF No. 24). This is a repetition of his allegations of inadequate security, and it too seeks an injunction to remedy the problem. In his Motion for a Preliminary Injunction, Ryan asserts that he was assaulted and then

moved to a more violent area where he was not given a mattress (ECF No. 26). As such, this Motion relates to his claims of inadequate bedding and inadequate security. Ryan has also filed a Motion for Summary Judgement (ECF No. 28); however, it merely restates the claims in his Complaint (ECF No. 1) and Amended Complaint (ECF No. 5).

The Defendants have filed a Motion for Partial Summary Judgment for Failure to Exhaust Administrative Remedies (ECF No. 44). The Defendants assert that Ryan has failed to exhaust the following claims: inadequate bedding and mattresses; inadequate security; windows being screwed shut; fire doors being welded shut; inadequate dining facilities and sanitation; and Cooley and Pennington's conduct with respect to the ARP process (ECF No. 44). In support of this Motion, Defendants have offered Cooley's sworn affidavit and Ryan's grievance detail reports (ECF No. 44-1). Ryan's allegations that the windows are screwed shut and the fire doors are welded shut are part of his claim for inadequate ventilation (ECF No. 5). Although this Motion for Summary Judgment was filed on February 13, 2018, Ryan has not responded.

## II. DISCUSSION

A. <u>Legal Standards</u>

1. <u>Summary Judgment</u>

Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

4

bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) When evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most favorable to the non-moving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). If the movant carries this burden, the burden shifts to the non-moving party to show that summary judgment should not be granted. *Id.* at 323. "The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Abarca v. Metro Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005) (citing *Celotex*, 477 U.S. at 324). In the absence of any proof, the Court will not assume that the Plaintiff "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

2. <u>The Prison Litigation Reform Act</u>

Because Ryan is a prisoner pursuing a civil action seeking redress from government employees, the Prison Litigation Reform Act (PLRA) applies and requires that this case be screened. The PLRA provides that "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B). Accordingly, the statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

The PLRA also requires prisoners to exhaust available administrative remedies before filing a lawsuit. 42 U.S.C. § 1997e(a). This exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). A prisoner's failure to exhaust available administrative remedies undermines these purposes.

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison

> grievance system will have little incentive to comply
> with the system's procedural rules unless noncompliance
> carries a sanction . . . .

*Id.* at 95. Dismissal is mandatory where a prisoner fails to properly exhaust

available administrative remedies before filing suit in federal court. *Gonzalez v.*

*Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (quoting *Woodford*, 548 U.S. at 85).

The MDOC has implemented an Administrative Remedy Program (ARP)

through which prisoners may seek formal review of a complaint or grievance

relating to any aspect of their incarceration.[2] This is a two-step process. *Stewart*

*v. Woodall*, No. 2:11-cv-207-KS-MTP, 2012 WL 2088883, at *2 (S.D. Miss. May 2,

2012). First, inmates must submit their complaints to the Legal Claims

adjudicator within thirty days of the incident. If accepted, the grievance will be

sent to the appropriate official, who issues the First Step Response. If the

inmate is unsatisfied with the response, he may proceed to step two, where a

final decision is made by the Superintendent, Warden, or Community

Corrections Director. Only after the two steps have been completed may an

unsatisfied inmate file suit. *Id.*

B. <u>Analysis</u>

    1. <u>Defendants' Motion for Summary Judgment</u>

In his Complaint, Ryan contends that he exhausted all claims, but he only

---

       [2]*See* MDOC Inmate Handbook, Ch. VIII, Administrative Remedy Program,
http://www.mdoc.ms.gov/Inmate-Info/Pages/Inmate-Handbook.aspx

lists three specific ARPs (ECF No. 1). However, he contends he filed ARP's concerning exercise time received and ventilation. He also contends he "attempted to address" the inadequate security at SMCI. He does not allege that he filed any ARPs regarding his claims of inadequate bedding or inadequate dining facilities and sanitation. He does contend that he filed ARPs concerning the incidents involving Smith and Evans, but he does not contend that he has filed an ARP concerning Pennington and Cooley's conduct (ECF No. 1). Although Ryan asserts that he has "filed multiple ARP's which were rejected in violation of my rights," his Amended Complaint contains no additional details about his ARPs (ECF No. 5).

In support of their Motion for Summary Judgment, the Defendants offer Cooley's sworn affidavit and Ryan's grievance detail reports, which list the following ARPs (ECF No. 44-1). (1) SMCI-16-1262: On June 28, 2016, Ryan complained of the lack of fans in the unit. At the first step, it was noted that fans were on order. At the second step, it was rejected as his unit "is just like all the others and meets the policy for MDOC to follow." (2) SMCI-16-1444: On July 28, 2017, Ryan complained that he did not get yard call. At the first step, the response was that all units are given yard call, and at the second step, it was noted that all units are given yard call unless the weather or security issues necessitate a change. (3) SMCI 16-1949: On October 25, 2016, Ryan complained about his access to the law library. At the second step, the response indicates his complaint was that the drop box was insufficient for requests to be submitted. It was rejected. (4) SMCI-16-2174: On November 29, 2016, Ryan objected to a rule or policy. Although it is unclear what

policy he objected to, there was no second step. (5) SMCI-17-0221: On February 15, 2017, Ryan filed his grievance regarding the Evans incident. There was no second step. (6) On February 21, 2017, Ryan filed a sensitive issue ARP request concerning inadequate mattresses and bedding. Pennington found that it did not meet the criteria for sensitive treatment and instructed Ryan to file it through the regular channels. There is no indication that Ryan has ever done so.

Ryan has filed three additional grievances since filing his complaint. (7) SMCI-17-0694: On June 2, 2017, Ryan filed a complaint that the vents needed to be cleaned. Ryan has indicated that the vents were cleaned in July of 2017 (ECF No. 19). (8) SMCI-17-0753: On June 14, 2017, Ryan complained about not receiving proper hygiene. There was no second step. (9) On July 10, 2017, Ryan filed another sensitive issue ARP request concerning security. It also did not merit sensitive treatment, and Ryan was instructed to file it through regular channels. According to Cooley's affidavit, he did not do so.

Although Ryan alleges that he has filed other ARPs, his evidence does not contradict the grievance detail reports. Ryan has therefore failed to exhaust the following conditions of confinement claims: inadequate mattresses and bedding; inadequate dining facilities and sanitation; and inadequate security. Because Ryan did not fully exhaust these claims prior to filing suit, dismissal of these claims is mandatory.

Ryan also has not exhausted his claims concerning the alleged abusive institutional practices. Additionally, with respect to the incidents involving Smith

and Evans, claims of verbal insults, threats, and derogatory remarks are not cognizable under § 1983. *Robertson v. Plano City*, 70 F.3d 21, 24-25 (5th Cir. 1995) (collecting cases). Further, Ryan has no constitutional right to the existence of a grievance procedure and no constitutional interest in having his grievance resolved to his satisfaction. *Guillory v. Hodge*, No. 2:14-cv-156-MTP, 2015 WL 1968636, at *1 (S.D. Miss. Apr. 30, 2015) (citing *Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005)); *see also Lijadu v. I.N.S.,* No. 06-0518, 2007 WL 837285, at *3 (W.D. La. Feb. 21, 2007) ("[D]etainees 'do not have a constitutionally protected right to a grievance procedure'—much less one that complies with their own personal preferences"). Therefore, Ryan's claims concerning "abusive institutional practices" should be dismissed and Defendants' Motion for Partial Summary Judgment should be granted.

   2.   Remaining Claims

   Only two conditions of confinement claims remain: the failure to provide adequate outside exercise time and the failure to properly ventilate the building. Ryan contends that he has been given only limited outside exercise time, including only one hour of outside exercise time in approximately eighty-five days (ECF Nos. 1, 5, & 19). He contends that this lack of exercise time has had psychological and physical effects on all of the inmates, including causing him to lose over seventy pounds (ECF No. 19). He also alleges that his housing unit is improperly ventilated (ECF Nos. 1 & 5), making it extremely hot in the summer (ECF No. 13). Specifically, he claims that there is only one fan, the windows are screwed shut, the

fire doors are welded shut, and the screens and ducts are filthy (ECF Nos. 1, 5, & 13). He argues that this constitutes a fire hazard (ECF No 5). However, he also admits that in July 2017, maintenance fixed the "air handlers" and cleaned the vents and in August 2017, his zone received three fans (ECF No. 19). At this time, Ryan's claims concerning exercise time and ventilation should be allowed to proceed.

      3.  <u>Ryan's Motions</u>

Because Ryan's Motion to Show Cause (ECF No. 24) concerns the inadequate security issue, stating that SMCI is "unsafe, understaffed, and dangerous," and asks for an injunction, it should be denied due to Ryan's failure to exhaust the inadequate security issue. Similarly, Ryan's Motion for a Preliminary Injunction (ECF No. 26) concerns his claims of inadequate security and inadequate bedding. It should also be denied due to Ryan's failure to exhaust these claims.

Finally, Ryan has also filed a motion seeking summary judgment on all of his claims (ECF No. 28). He is not entitled to summary judgment. In addition to failing to exhaust certain claims, as discussed above, Ryan's Motion merely restates the allegations of his Complaint and Amended Complaint; he has not overcome his burden.

## RECOMMENDATION

Based on the above analysis, the undersigned recommends that the Defendants' Motion for Partial Summary Judgment (ECF No. 44) be granted; Plaintiff's Motion to Show Cause (ECF No. 24) be denied; Plaintiff's Motion for a

Preliminary Injunction (ECF No. 26) be denied; and Plaintiff's Motion for Summary

Judgment (ECF No. 28) be denied.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Under Rule 72(a)(3), Local Uniform Civil Rules of the United States District

Courts for the Northern District of Mississippi and the Southern District of

Mississippi, after service of a copy of this Report and Recommendation, each party

has fourteen (14) days to serve and file with the Clerk any written objections to it.

Within seven (7) days of service of objections, the opposing party must either serve

and file a response or notify the District Judge that he does not intent to respond to

the objection. An objecting party must specifically identify the findings, conclusions,

and recommendations to which he objects; the District Court need not consider

frivolous, conclusive, or general objections. A party who fails to file written

objections to the proposed findings, conclusions, and recommendations within

fourteen (14) days of being served a copy is barred, except upon grounds of plain

error, from attacking on appeal any proposed factual finding or legal conclusion

accepted by the District Court to which he did not object. *Douglass v. United Servs.*

*Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 30th day of July, 2018.

*s/ John C. Gargiulo*

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE